107 P.3d 377

STATE of Arizona, Appellee,
Cross–Appellant,

v.

Tonatihu AGUILAR, Appellant,
Cross–Appellee.

No. 1 CA–CR 02–0079.

Court of Appeals of Arizona,
Division 1, Department A.

March 3, 2005.

Terry Goddard, Attorney General, by Randall M. Howe, Chief Counsel, Criminal Appeals Section and Katia Mehu, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender, by Joel M. Glynn, Assistant County Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

SULT, Judge.

¶ 1 Sixth Amendment confrontation clause analysis significantly changed with the United States Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). *Crawford* holds that "testimonial" out-of-court statements by unavailable declarants, including those statements previously admissible as firmly rooted hearsay exceptions, cannot be admitted at a criminal trial over a confrontation clause objection unless the proponent can show that the defendant had a prior opportunity to cross-examine the author of the statement. In this opinion, we apply the Court's revised approach in order to determine whether a particular type of hearsay-excepted out-of-court statement, the excited utterance, is testimonial. Because we find that an excited utterance heard and testified to by a lay witness does not fit within *Crawford's* definition of testimonial, as we understand that term, we find no error in the trial court's admission of certain excited utterances that inculpated Defendant.

## BACKGROUND

¶ 2 Defendant was charged with first-degree murder and other offenses arising out of the killing of Hector Imperial, Sr. and his wife, Sandra. The State sought the admission of out-of-court statements made by Hector Sr. that were overheard by his young son, Hector Jr., and by Sandra to her brother-in-law, Ruben Imperial. The State claimed the statements were admissible, *inter alia,* as excited utterances.

¶ 3 Hector Jr. testified that Defendant was known as "Dopey" and that he, Hector Jr., had met Dopey and had been to his house. On the night of the murders, then five-year-old Hector Jr. and his mother were in the kitchen while his father was outside cleaning the car. Hector Jr. testified that at some point he heard his father yell "Dopey, Dopey, Dopey," and then saw Hector Sr. come into the kitchen and retrieve a gun from the top of the refrigerator. After he got the gun, Hector Sr. told Hector Jr. to go into his

mother's bedroom, where he was joined by his mother. When they later ventured into the living room, they saw the slain Hector Sr. lying on the floor.

¶ 4 Hector Jr. and his mother returned to the bedroom, and the next thing that Hector Jr. remembered was that Dopey, whose face was partially covered in a mask, came into the bedroom and told his mother to "shut up." Sandra offered to return Dopey's money but Dopey shot her in the head or neck and ran out. Hector Jr. stayed in the room for awhile and then went into the hallway where he saw police officers.

¶ 5 Ruben testified that the night before the murders, he received a telephone call at work from Sandra, whom he described as nervous, frightened, and hysterical. Sandra told him that "Dopey had went over to the house with a friend, demanded money for the car ... and if [Hector Sr.] didn't get them the money by tonight, they were going to go by the house and shoot up the house." Ruben also testified that Sandra was "crying and scared because [Hector Sr.] had left from the house and I was at my work." Finally, Ruben averred that he knew Defendant was called "Dopey."

¶ 6 Defendant interposed a hearsay objection to Hector Jr.'s relating the "Dopey, Dopey, Dopey" statement, but the trial court overruled the objection, explaining that Hector Sr.'s conduct surrounding the statement showed that he made the statement in reaction to a startling event that did not permit reflection. Also over a hearsay objection, the trial court admitted the telephonic statement of Sandra to Ruben except for the future threat to shoot up the house. In a separate memorandum decision issued this date, we have analyzed more fully the objected-to statements and found that they qualified as excited utterances. We also addressed and rejected the other issues raised by Defendant.

## ANALYSIS

¶ 7 In *Crawford*, the Supreme Court held that the confrontation clause requires that the reliability of testimonial statements be tested by cross-examination, and if a defendant had not had a prior opportunity to do so, such a statement was inadmissible at trial notwithstanding that it qualified as a firmly rooted hearsay exception. 541 U.S. at 68, 124 S.Ct. at 1374. While the Court declined to provide an encompassing definition of testimonial, it offered this guidance. " 'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* at 51, 124 S.Ct. at 1364 (citation omitted).

¶ 8 The following were identified as examples of a "core class" of testimonial statements: *ex parte* in-court testimony or its functional equivalent, such as affidavits, custodial examinations, or prior testimony that the defendant was unable to cross-examine; similar pretrial statements that declarants would reasonably expect to be available for use at trial; and statements taken by police during investigative interrogations. *Id.* at 51, 124 S.Ct. at 1364. With respect to this last category, the Court emphasized that it was using "interrogation" in the colloquial, rather than the technical, legal sense, thereby presumably including police questioning that occurs in the field. *Id.* at 53, n. 4, 124 S.Ct. at 1365, n. 4. *See generally Robert P. Mosteller, Crawford v. Washington: Encouraging and Ensuring the Confrontation of Witnesses,* 39 U. Rich. L.Rev. 511, 565 (2005).

¶ 9 The question we address is whether an excited utterance heard by a lay witness qualifies as a testimonial statement. To resolve this question, we juxtapose the definition of excited utterance against *Crawford's* testimonial characterization and compare the two. *Crawford's* listing of examples gives an incomplete but workable definitional framework for testimonial. As for excited utterance, no better description exists than that propounded by the Arizona Supreme Court in *Keefe v. State,* 50 Ariz. 293, 297–98, 72 P.2d 425, 427 (1937):

[U]nder certain circumstances of physical or mental shock, a stress of nervous excitement may be produced in a spectator

which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, rather than reason and reflection, and during the brief period when consideration of self-interest could not have been fully brought to bear, the utterance may be taken as expressing the real belief of the speaker as to the facts just observed by him.

¶ 10 We discern nothing in *Keefe's* description of an excited utterance that is even remotely similar to most of what *Crawford* offers as an example of a testimonial statement. Such an utterance is not a solemn, formal declaration, nor is it *ex parte* in-court testimony or its functional equivalent. And because it is made by a declarant whose reflective faculties have been stilled, the excited declarant will not simultaneously be rationally anticipating that his utterance might be used at a future court proceeding. Because excited utterances heard and testified to by a lay witness are simply not akin to a *Crawford*-style testimonial statement, we hold that such an utterance is admissible without the necessity of satisfying the requirements of the confrontation clause.

¶ 11 We have examined cases from other jurisdictions that have applied the *Crawford* analysis to excited utterances testified to by lay witnesses. In *State v. Orndorff*, 122 Wash.App. 781, 95 P.3d 406, 408 (2004), the court found that an excited utterance to a lay witness was not testimonial where the declarant had no reason to expect it would be used by prosecutors, it was not made to establish or prove a fact, nor was it a statement made in response to police questioning; rather it was a "spontaneous declaration made in response to the stressful incident she was experiencing." In *People v. Vigil*, 104 P.3d 258, 265 (Colo.App.2004), the court found that excited utterances made by a child to his father and the father's friend were not testimonial because they were not solemn or formal statements and were not made to persons associated with governmental activity. *See*

*also People v. Compan*, 100 P.3d 533, 538 (Colo.App.2004); *Demons v. State*, 277 Ga. 724, 595 S.E.2d 76, 80–81 (2004); *State v. Doe*, 140 Idaho 873, 103 P.3d 967, 972 (App. 2004); *People v. Rivera*, 8 A.D.3d 53, 778 N.Y.S.2d 28, 29 (App.Div.2004). We find that our holding is in accord with the weight of the emerging jurisprudence on this question.

¶ 12 The only manner by which *Crawford* might be implicated is if the excited utterance is made in response to a police officer's query. *See Mosteller, supra*, at 577. But in *Fowler v. State*, 809 N.E.2d 960, 964 (Ind. App.2004), over a *Crawford* objection, the court admitted an excited utterance made to a police officer at the scene because "[w]hatever else police 'interrogation' might be, we do not believe that word applies to preliminary investigatory questions asked at the scene of a crime shortly after it has occurred". The court in *Lopez v. State*, 888 So.2d 693, 700 (Fla.App.2004), took a different approach and held that an excited utterance made to a police officer was testimonial, not because it was made to an officer but because "[declarant] surely must have expected that the statement he made to Officer Gaston might be used in court against the defendant." We need not address this issue because the utterances in this case were not elicited by police inquiry nor made in the presence of police officers.

**CONCLUSION**

¶ 13 Excited utterances heard and testified to by lay witnesses are not *Crawford*-style testimonial statements. Consequently, we find the excited utterances in this case were properly admitted, and we affirm Defendant's convictions and sentences.

CONCURRING: PHILIP HALL and LAWRENCE F. WINTHROP, Judges.