**Tyrone Antoine HARTSFIELD, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2007–SC–000077–DG.

Supreme Court of Kentucky.

Feb. 19, 2009.

---

We reverse the Court of Appeals, in part, because we conclude that the alleged victim's statements to an investigative nurse were testimonial in nature; and their admission into evidence at trial would violate Hartsfield's confrontation rights. But we affirm the Court of Appeals, in part, because we conclude that excited utterances made by the victim to lay witnesses were not testimonial in nature; and their admission at trial would not violate the Confrontation Clause. We remand to the trial court for further proceedings consistent with this opinion.

## I. *FACTUAL AND PROCEDURAL BACKGROUND.*

A grand jury indicted Hartsfield on charges of multiple sexual crimes involving three separate female victims, one of whom was M.B. The indictment charged Hartsfield with the first-degree rape and the first-degree sodomy of M.B. M.B. died before the indictment came to trial, prompting Hartsfield's motion to dismiss the counts in. the indictment relating to M.B. on the ground that M.B.'s statements concerning the alleged crimes were inadmissible hearsay. The trial court denied the motion to dismiss. The Commonwealth then moved in limine to establish affirmatively the admissibility of M.B.'s statements. The first of the motions concerned M.B.'s statements to a nurse; the second motion concerned two statements made to two separate individuals following the incident, which were described as excited utterances.[2]

V. Gene Lewter, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Kenneth Wayne Riggs, Assistant Attorney General, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

We granted Tyrone Hartsfield's motion for discretionary review of a Court of Appeals opinion that held that the prosecution's use at trial of statements made by an alleged sexual assault victim, who died after the return of the indictment but before trial, would not violate the Sixth Amendment's Confrontation Clause. We granted review of this issue because of the significant impact the United States Supreme Court's analysis of the Confrontation Clause in *Crawford v. Washington*[1] has on trial practice in Kentucky.

Following the alleged sexual assaults, M.B. had been taken to a hospital where she was examined by a Sexual Assault Nurse Examiner (abbreviated SANE and informally referred to as a SANE nurse).[3]

---

1. 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

2. Kentucky Rules of Evidence (KRE) 803(2).

3. Kentucky Revised Statutes (KRS) 314.011(14) states that: " 'Sexual assault nurse examiner' means a registered nurse who has completed the required education

M.B. related the details of the rape to the SANE nurse, who also collected samples using a rape test kit.

As for the statements claimed by the Commonwealth to be admissible as excited utterances, the Commonwealth stated that M.B. fled her house immediately after the rape and encountered a passerby named Malcolm Buchanan. M.B. was crying and yelled, "He raped me; he raped me." [4] In addition, the Commonwealth reported that M.B. ran to her daughter's house and told her daughter she had just been raped. The record indicates M.B.'s statement to her daughter was made close in time and proximity to the alleged rape.

Following a hearing, the trial court excluded all of the statements as an abridgment of Hartsfield's right to cross-examine the witnesses against him. The court further ordered the counts regarding M.B. to be dismissed. In light of the rulings in limine, the Commonwealth and Hartsfield then reached a plea agreement whereby Hartsfield pleaded guilty to the other amended counts of the indictment. [5] The Commonwealth then appealed from the trial court's order overruling the motions in limine and dismissing the counts of the indictment as to M.B. The Court of Appeals reversed the trial court on the belief that all of the statements were covered by hearsay exceptions and, in particular, that the statements to the SANE nurse did not run afoul of the Confrontation Clause because they were not made by M.B. for the purpose of causing the nurse to testify on her behalf.

## II. ANALYSIS.

The determination of the admissibility of evidence is within the sound discretion of the trial court. [6] A trial court abuses its discretion when its decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. [7] In this instance, we must resolve whether the trial court applied the correct legal principle.

Hartsfield asserts that the admission of any of these statements would violate his right to confront adverse witnesses under the Sixth Amendment's Confrontation Clause. The United States Supreme Court held in *Crawford v. Washington* [8] that the Confrontation Clause precludes admission of the statements of a witness unavailable to testify at trial if the witness' out-of-court statements were "testimonial," unless the accused had a prior opportunity to cross-examine the witness. [9] Before *Crawford,* the Clause had been interpreted to allow admission of an unavailable witness's out-of-court statement if it possessed adequate indicia of reliability. Before *Crawford,* the admissibility question was whether the statement fell within a firmly rooted hearsay exception or pos-

and clinical experience and maintains a current credential from the board [of Nursing] as provided under KRS 314.142 to conduct forensic examinations of victims of sexual offenses under the medical protocol issued by the Office of the Kentucky State Medical Examiner pursuant to KRS 216B.400(4)[.]"

4. According to Buchanan's statement to police contained in the record, Buchanan also spotted the alleged perpetrator hastily leaving the house just before M.B. came out.

5. Hartsfield entered a guilty plea to amended charges of two misdemeanor counts of sexual misconduct and was sentenced to twelve months in jail, with credit for time served on the charges.

6. *Love v. Commonwealth,* 55 S.W.3d 816, 822 (Ky.2001).

7. *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999).

8. 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

9. *Id.* at 53–54, 124 S.Ct. 1354.

sessed other particularized guarantees of trustworthiness.[10] The Supreme Court in *Crawford* rejected that analysis as incompatible with the Framers' intent in creating the Confrontation Clause.[11]

Since *Crawford*, the threshold examination to determine a Confrontation Clause violation is whether the proffered out-of-court statement was *testimonial* Examples of testimonial statements given in *Crawford* included prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and statements made in response to police interrogations.[12] But the Supreme Court did not otherwise provide a comprehensive definition of what is encompassed by the term *testimonial.*

The Court referenced several "formulations of . . . 'testimonial' statements" in *Crawford* in its opinion: (1) "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; [13] (2) "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; [14] and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." [15] The Court did not select any of these formulations as

the definitive test to apply. And the Court did say that where nontestimonial hearsay is at issue, it is consistent with the Constitution to allow the states the development of their own hearsay law.[16]

■ Since *Crawford*, the Supreme Court addressed the question of which police interrogations qualify as *testimonial* in two decisions, *Davis v. Washington*, and its companion case, *Hammon v. Indiana.*[17] In *Davis*, the Court held that a domestic violence victim's 911 call for help and her responses to the emergency operator's questions were nontestimonial and, therefore, not subject to the Confrontation Clause. In *Hammon*, the police interview of a victim at her home after police responded to a report of a domestic disturbance contained testimonial statements that were subject to the Confrontation Clause. The Court distinguished the statements in *Hammon* based on the role of the police at the time the statement was obtained:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events po-

---

10. *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

11. *Crawford*, 541 U.S. at 59–68, 124 S.Ct. 1354.

12. *Id.* at 68, 124 S.Ct. 1354.

13. *Id.* at 51, 124 S.Ct. 1354 (*citing* the Brief for Petitioner).

14. *Id.* at 51–52, 124 S.Ct. 1354 (*citing White v. Illinois*, 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)).

15. *Id.* at 52, 124 S.Ct. 1354 (*citing* the Brief for National Association of Criminal Defense Lawyers, et al., as *Amici Curiae* ).

16. *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354.

17. 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

tentially relevant to later criminal prosecution.[18]

Investigative interrogations are directed at establishing the facts of a past crime in order to identify, or provide evidence to convict, the perpetrator; and the product of such an investigative interrogation is testimonial.[19] In *Davis*, the Court cited factors that are instructive in characterizing a statement as testimonial, including: whether the events spoken about were actually happening, or were past events; the presence of an ongoing emergency; whether what was asked and answered was for the purpose of resolving the situation, rather than simply learning what had happened in the past; and, finally, the level of formality in the interview.[20] The Court in *Davis* and *Hammon* noted that these results were provided for interrogations; but the holding was not intended to mean that in the absence of interrogation, statements are automatically nontestimonial.[21]

**A.** *The Sexual Assault Nurse Examiner's Questioning was Predominantly for the Purpose of Information Gathering and the Resulting Statement was Testimonial.*

█ In the case at bar, the interview of M.B. by the SANE nurse bears more similarity to a police interview, as in *Crawford* and *Hammon*, than to the questioning conducted in the 911 call in *Davis*. *Davis* advises that persons who are not police officers, but who may be regarded as agents of law enforcement (such as the 911 operator), can conduct interrogations which would likewise be considered testimonial.[22]

After the alleged rape, M.B. was taken to the hospital,[23] where she provided the SANE nurse with the details of what occurred. The nurse also utilized a sexual assault collection kit.

The SANE nurse was acting in cooperation with or for the police. The protocol of SANE nurses requires them to act upon request of a peace officer or prosecuting attorney.[24] A SANE nurse serves two roles: providing medical treatment and gathering evidence.[25] SANE nurses act to supplement law enforcement by eliciting evidence of past offenses with an eye toward future criminal prosecution. The SANE nurse under KRS 314.011(14) is made available to "victims of sexual offenses," which makes the SANE nurse an active participant in the formal criminal investigation. We believe their function of evidence gathering, combined with their close relationships with law enforcement, renders SANE nurses' interviews the functional equivalent of police questioning.

In the case before us, the SANE nurse's interview was not to provide help for an ongoing emergency but, rather, for disclosure of information regarding what had happened in the past. M.B. was away from the perpetrator, and the questioning was not for the purpose of resolving a problem. The interview had some level of formality, despite being unsworn. So the statement was virtually the kind of statement that a witness would give at a trial or hearing.

18. *Id.* at 822, 126 S.Ct. 2266.

19. *Id.* at 826, 126 S.Ct. 2266.

20. *Id.* at 827, 126 S.Ct. 2266.

21. *Id.* at 822 n. 1, 126 S.Ct. 2266.

22. *Id.* at 823 n. 2, 126 S.Ct. 2266.

23. The record does not reveal how long after the alleged rape this occurred but indicates it was that same day or within hours.

24. KRS 314.011(14) and KRS 216B.400(4).

25. *See* KRS 216B.400(4).

Looking to the factors enumerated in *Davis,* the SANE nurse's questioning involved past events, was not related to an ongoing emergency, and took on the nature of a formal interview. So we conclude that the statements taken from M.B. during her interview with the SANE nurse were testimonial in nature.

Following the Supreme Court precedent, we conclude that the Court of Appeals erred when it reversed the trial court's ruling in limine excluding from use at trial the statements M.B. gave the SANE nurse. These statements were testimonial statements that Hartsfield never had the opportunity to cross-examine and so they are barred by the Confrontation Clause.

B. *The Excited Utterance Hearsay Statements Were Not Testimonial.*

■ The two statements that the Commonwealth wants to introduce as excited utterances present a more difficult issue, since *Davis* and *Hammon* only address what happens when statements are given to law enforcement or their surrogates. The excited utterances at issue, made to lay witnesses, do not fit within the *Crawford* and *Davis* formulation of testimonial statements. We conclude that the Court of Appeals correctly reversed the trial court for excluding these statements as violative of the Confrontation Clause.

■ An excited utterance cannot be introduced into evidence if it is determined to violate the Confrontation Clause because it is a testimonial statement. The statements in the case at bar did not bear a similarity to the testimonial statements at issue in *Crawford.* The statements in the case at hand were spontaneous and unprompted by questioning. These statements were not testimonial because they

were not formal, not delivered to law enforcement or its equivalent, and were in the nature of seeking help for an emergency (even though it was not ongoing). We do not regard the excited utterances identified here as testimonial.

■ The Court of Appeals erred in failing to apply the Confrontation Clause analysis to the alleged excited utterances in the first instance, but we agree that it correctly determined that the statements identified meet the criteria to be admissible under the excited utterance hearsay exception. According to KRE 803(2), an *excited utterance* is a statement describing a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. For an out-of-court statement to meet that definition, the declarant's condition at the time must give the impression that the statement was spontaneous, excited, or impulsive rather than the product of reflection and deliberation.[26] The eight factors to consider in determining if a statement is an excited utterance are:

(i) lapse of time between the main act and the declaration [the only factor considered here], (ii) the opportunity or likelihood of fabrication, (iii) the inducement to fabrication, (iv) the actual excitement of the declarant, (v) the place of the declaration, (vi) the presence there of visible results of the act or occurrence to which the utterance relates, (vii) whether the utterance was made in response to a question, and (viii) whether the declaration was against interest or self-serving.[27]

■ We believe the statement to Buchanan fits squarely within the excited utterance exception to the hearsay rule. In the case at hand, the lapse of time between

26. *Noel v. Commonwealth,* 76 S.W.3d 923, 926 (Ky.2002).

27. *Souder v. Commonwealth,* 719 S.W.2d 730, 733 (Ky.1986).

M.B.'s statement to Buchanan and the event was negligible because it occurred immediately after the perpetrator was seen leaving M.B.'s residence; the opportunity for fabrication was negligible; no inducement to fabrication has been cited; the actual excitement of the declarant was shown—it was alleged she was yelling and crying; M.B. was just outside the place of the occurrence; there was no questioning before the statements were yelled; and, finally, the statement was not against her interest.

As for M.B.'s later statement to her daughter, the connection is less clear: more time had elapsed for her to get to her daughter's (but, apparently, merely minutes); there was more chance of fabrication; no inducement to fabrication was shown, however; M.B. was still upset and excited according to the daughter; she was removed from the place of the events; she was not questioned by her daughter to evoke the response; and the statement was not against her interest. While this statement is a little more questionable than that made to Buchanan, it appears that M.B. was still upset and still seeking help. Moreover, the statement was so similar to the earlier one that we believe both should be similarly categorized as excited utterances.[28] Therefore, we affirm the Court of Appeals' reversal of the trial court's exclusion in limine of these statements.

### III. CONCLUSION.

The statements given to the SANE nurse were testimonial under the framework provided in *Crawford* and in the Supreme Court cases that follow its rule. And the excited utterances heard by lay witnesses were not testimonial under that framework. So we reverse the Court of Appeals insofar as it reversed the trial court's exclusion of the SANE nurse's testimony, but we affirm the Court of Appeals' reversal of the trial court's ruling that excluded from trial the statements to Buchanan and the statements discussed in this opinion as having been made to M.B.'s daughter. We remand the case to the trial court for further proceedings in accordance with this opinion.

CUNNINGHAM, NOBLE, SCHRODER, SCOTT, and VENTERS, JJ., sitting. CUNNINGHAM, NOBLE, SCOTT, and VENTERS, JJ., concur. SCHRODER, J., concurs in result only by separate opinion. ABRAMSON, J., not sitting.

Opinion by Justice SCHRODER, concurring in result only.

I concur with the majority as to the SANE nurse. As to the statements made to the passerby and daughter, I concur in result only based on the legal analysis.

The first step in a *Crawford* analysis (before any hearsay exception may be considered) requires a determination of whether the statements at issue are testimonial or nontestimonial. *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); *Rankins v. Commonwealth*, 237 S.W.3d 128 (Ky.2007).[1] Deciding whether the statements at issue are

**28.** M.B. made further statements to her daughter in addition to her statement that she had been raped. These statements were in the nature of describing the perpetrator so that others might identify him. The Commonwealth did not cite any of these statements in the motion in limine; and they were not considered by the courts below, nor by this Court, to have met any hearsay exception, and they may not be used at trial.

**1.** The majority's analysis appears to follow that of the Arizona Court of Appeals in *State v. Aguilar*, 210 Ariz. 51, 107 P.3d 377 (2005), a pre-*Davis* case cited in the Commonwealth's brief.

testimonial in this case presents a puzzle. Neither *Crawford* nor *Davis* limited testimonial statements to those obtained by law enforcement or their agents. And, *Crawford* itself appears to support the trial court's ruling that the admission of these statements would violate the Confrontation Clause. *Crawford,* 541 U.S. at 44, 62, 124 S.Ct. 1354 (discussing *Raleigh's Case,* 2 How. St. Tr. 1 (1603)). However, *Crawford* was subsequently followed by *Davis's* holding that even accusatory statements which are in the nature of seeking help for an ongoing emergency are generally nontestimonial.[2] The Court's explanation in *Davis* was lacking, but seemed to center on the dissimilarity between a present-tense statement proclaiming an emergency (i.e. "what is happening"), and in-court testimony (i.e. "what happened"), the former not being a functional equivalent of the latter.[3] This creates a dilemma in the present case, because, unlike the statements to the 911 operator in *Davis,* describing events as they occurred, the statements here, while clearly in the context of an ongoing emergency, referred to a criminal event which had already taken place (recognized by *Davis* as characteristic of a testimonial statement). 547 U.S. at 827–830, 126 S.Ct. 2266. Further, in light of the facts of this case, we cannot ignore *Davis's* reference to an old English case, *King v. Brasier,* wherein "a young rape victim, 'immediately on her coming home, told all the circumstances of the injury' to her mother." *Id.* at 828, 126 S.Ct. 2266 (quoting *Brasier,* 168 Eng. Rep. 202 (1779)). The Court appears to infer that

these statements were testimonial, because the story was an account of past events. *Id.*

In the present case, even though the admission of the statements at issue appears to violate the Confrontation Clause under *Crawford,* I believe that the statements fall under the ongoing emergency exception created by *Davis.* The statement to the passerby was virtually contemporaneous with the crime, made as the victim/declarant was escaping. The record further indicates that the victim/declarant ran to the daughter's in her escape, gained entry, and they locked the door. I believe there was still an ongoing emergency.[4] Unlike Brasier, the statement to the daughter was a cry for help, not an account of "all the circumstances of the injury." Therefore, under *Davis,* I believe both statements are nontestimonial.

Having first determined that the statements to both the passerby and daughter are nontestimonial, the issue then becomes whether the statements are admissible under any hearsay exception. *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354. I agree with the majority that both statements would qualify as excited utterances.

---

**2.** *Davis* had not been rendered at the time the trial court made its ruling on the admissibility of the statements at issue on May 16, 2005.

**3.** 547 U.S. at 827–828, 126 S.Ct. 2266. While *Davis* articulated a "primary purpose" test regarding interrogations by law enforcement, the Court clarified that "it is in the final analysis the declarant's statements, not the

interrogator's questions, that the Confrontation Clause requires us to evaluate." *Id.* at 822, n. 1, 126 S.Ct. 2266.

**4.** While lacking specificity, the record indicates that all of the events were close in time and location.