RENDERED: MAY 5, 2016
TO BE PUBLISHED

*Supreme Court of Kentucky*

2014-SC-000255-DG

DATE 5-26-16 Ella Grouth P.C.

COMMONWEALTH OF KENTUCKY                                    APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                      CASE NO. 2012-CA-001803-MR
BREATHITT CIRCUIT COURT NO. 05-CR-00043


DAVID MCKEE                                                  APPELLEE


**OPINION OF THE COURT BY JUSTICE NOBLE**

**REVERSING**

David McKee was convicted of wanton murder and fourth-degree assault after a significant car wreck in which he was highly intoxicated and was alleged to have crossed the center line, resulting in a head-on collision. The Court of Appeals reversed the convictions after concluding that his trial counsel had been ineffective in failing to conduct an independent investigation that "may" have turned up a diagram of the accident scene that, in turn, "may" have helped an accident reconstructionist show that McKee was not at fault. Also, the attorney was found to be ineffective in failing to object to an emergency medical report tending to show that the victim driver was not intoxicated, despite some evidence otherwise, because it was "possible" that another result could have obtained.

Because the Court of Appeals applied the ineffective-assistance prejudice standard incorrectly, and because McKee failed to show a reasonable probability of a different result absent his counsel's purported errors, this Court reverses.

## I. Background

On the evening of December 17, 2004, McKee was driving in Breathitt County when his vehicle collided head on with a vehicle driven by Anthony Wenrick. McKee was not injured, and Wenrick suffered only minor injuries. Wenrick's wife, Michelle Wenrick, who was in the passenger seat, also did not appear to be seriously hurt. But as it turned out, she suffered significant internal injuries from which she died several hours later.

When police arrived at the scene, they smelled alcohol on McKee. They administered field-sobriety tests, which McKee failed, and then took him to the hospital for a blood test. That test showed that his blood-alcohol content was .18, well above the legal driving limit. Witnesses in a car behind the Wenricks stated that McKee had been driving without headlights and had crossed the center line into the oncoming lane.

McKee was indicted for wanton murder, fourth-degree assault, and DUI. His case first went to trial in 2005. Although his theory of the case was that Wenrick had crossed the center line and caused the accident, his counsel put on no direct proof of this and McKee did not testify. Nor did his counsel impeach Wenrick with medical evidence of the man's own blood-alcohol content and possible intoxication, although the Commonwealth introduced this

2

evidence and addressed it, showing largely that it did not evince intoxication on

Wenrick's part.[1] McKee was convicted and sentenced to 20 years in prison.

This Court affirmed his conviction on direct appeal. *See McKee v.*

*Commonwealth*, 2005-SC-000954-MR, 2007 WL 1536852 (Ky. May 24, 2007).

McKee challenged his conviction under Criminal Rule 11.42, claiming

that his trial counsel was ineffective for having failed to present a real defense

to the charges, including "that despite evidence that Wenrick may have also

been intoxicated at the time of the accident, defense counsel neither cross-

examined Wenrick nor presented any medical testimony concerning the

medical records indicating that Wenrick had alcohol in his system," and "that

---

[1] As noted in McKee's first appeal, Wenrick's medical records included several references to "acute alcohol intoxication," and stated in one place that his "[b]lood alcohol level was 0.4." *McKee v. Commonwealth*, 2005-SC-000954-MR, 2007 WL 1536852, at *2 (Ky. May 24, 2007). Another portion of the records, a lab report, clarified that his blood-alcohol content was "ALC 0.4H" with the units listed as "mg/d." An expert testified that many hospitals report blood-alcohol levels in "milligrams per deciliter," whereas forensic labs use "grams per 100 milliliters," and to convert the former to the latter, one must divide the number by 1000. (This can be accomplished by simply moving the decimal three spaces to the left.) In his closing, the Commonwealth's Attorney noted that several pages of Wenrick's medical records had an incorrect Social Security number, suggesting perhaps that the noted "acute alcohol intoxication" pertained to someone else, and that the hospital may have been using the "milligrams per deciliter" measurement for Wenrick's blood-alcohol level, which would equate to a negligible .0004 under the usual method used in courts. On the direct appeal, we agreed that this was an appropriate argument, especially in light of the lab report showing a measurement in "mg/d," which we stated "indicates that the hospital *may* have, in fact, used the milligrams per deciliter standard." *Id.* at *3 (emphasis added).

In retrospect, it is difficult to see how the hospital could have been using any other standard or units of measurement. Although the usual abbreviation of or symbol for deciliter is "dL" or "dl," there can be little question what the hospital's abbreviation of "mg/d" means, given the context. Indeed, the abbreviation *d* would otherwise mean "day" as used in the metric system (e.g., "1 d," meaning "one day"), which would not make sense in context. Moreover, the lab appears to have omitted the last character of the abbreviation *dl* because there was insufficient space; other, similar units were included for other measures, such as "g/dl," suggesting the system that printed the lab report only included four spaces for units of measurement, which explains why the alcohol concentration is listed as mg/d.

defense counsel failed to hire an accident reconstructionist even though [McKee] maintained he did not cross the center line as was stated in the police report." *McKee v. Commonwealth*, 2008-CA-001478-MR, 2009 WL 3786274, at *1 (Ky. App. Nov. 13, 2009). The trial court denied his motion, but the Court of Appeals reversed, concluding that defense counsel had been ineffective on both fronts, and remanded for a new trial.

McKee had different counsel for his second trial. His new counsel hired an accident reconstructionist, Dennis McWilliams, to examine the accident scene. McWilliams was unable to reconstruct the accident because of a lack of information about the accident scene. He testified at trial that he had not seen the scene until several years after the accident, and thus was unable to obtain information about the accident directly. He noted specifically that he had no information about skidmarks or the debris field (both of which could have been useful in determining the point of impact) or the headlamps of the vehicles (which could have been useful in determining whether they were on at the time of impact).

This lack of information was explained in part by the testimony of Elvis Noble, the police officer who first responded to the accident scene. At that time, Mrs. Wenrick was still alive, and did not appear seriously harmed. The officer thus approached the wreck as a simple traffic accident, rather than a criminal investigation, and prepared only an accident report. As a result, he did not contact the Kentucky State Police to have an accident reconstruction done, and he did not do one himself because he was not trained to do so. Because the matter was treated as a mere traffic accident, the scene was not documented

4

very well, with only a few photographs being taken that night before the vehicles were removed and no measurements being taken of the distances between the vehicles or their exact locations.

The next day, after learning of Mrs. Wenrick's death, the officer returned to the scene and made a rough sketch of the roadway, which he used to generate a diagram showing the final resting place of the vehicles[2] in his accident report. This diagram was not provided to the Commonwealth's Attorney and thus was not provided to defense counsel, despite an open-file discovery policy. Indeed, the diagram's existence was unknown to both counsel until the officer mentioned it on cross-examination when asked about his return to the accident scene the next day.[3]

As part of the retrial, defense counsel presented evidence of Wenrick's possible intoxication. He also elicited testimony from McWilliams, who primarily described the reconstruction process and information that would be needed for such a process. McWilliams testified that he was unable to do a reconstruction or offer an opinion about the point of impact because of the lack of information available to him.

McKee was again convicted. This time, he was sentenced to 25 years in prison. The murder and assault convictions and sentence were also affirmed on

---

[2] A copy of this report was not made part of the record, but based on discussions of it at a bench conference, it appears to have also shown an estimated point of impact, although Officer Noble testified that he believed he had only shown the final resting places of the cars.

[3] In his testimony at the first trial, the officer made several references to preparing an accident report, but he did not refer to a diagram at that time.

direct appeal, though the DUI conviction was vacated. *See McKee v. Commonwealth*, 2011-SC-000243-MR, 2012 WL 1478779 (Ky. Apr. 26, 2012).

McKee challenged his remaining convictions, again under Criminal Rule 11.42. Again, he was unsuccessful at the trial court, which denied his motion without an evidentiary hearing, concluding that he could not demonstrate prejudice.

And, again, McKee was successful at the Court of Appeals, which vacated his convictions and remanded for yet another trial. This time, the court concluded that McKee's counsel had been ineffective in failing to conduct his own investigation into the accident scene and instead relying on the Commonwealth's open-file policy, and in failing to object to the introduction of an emergency medical report.

The claimed failure to investigate centered on the diagram showing final resting places of the vehicles drawn by Officer Noble.[4] The Court of Appeals concluded that had McKee's counsel investigated the matter independently, such as by interviewing the officer, he "may have discovered this document earlier and been able to provide it to the [reconstruction] expert." The court noted (incorrectly) that although there was no testimony from a defense accident reconstructionist at the second trial, one had previously been employed to examine the scene of the accident and that the diagram of the scene "may certainly have been of assistance to him in rendering an expert

---

[4] The Court of Appeals' opinion also refers to photographs of the scene that were not included in the Commonwealth's file, but the court's opinion does not refer to them again.

6

opinion in this matter." Because the diagram might have been useful to an expert, the court concluded, there was "a reasonable probability that but for counsel's errors the result of the proceeding would have been different." The court qualified this conclusion by stating:

> We certainly cannot say for certain whether this document would have been provided had counsel investigated nor whether the document, had it been provided, would have enabled the expert to render a definitive opinion that may have changed the course of the trial in this matter. Nevertheless, we cannot conclude with reasonable probability that such would not have been the case had counsel conducted an investigation.

The second finding of ineffective assistance related to a report by emergency medical personnel concerning Wenrick, which was admitted without calling the person who made the report. The report in question was used to counter McKee's claim that Wenrick had been intoxicated the night of the crash. The Commonwealth, after having admitted the records in question, stated in closing that intoxicated persons have bloodshot eyes and that the medical report did not show that Wenrick had bloodshot eyes.

The Court of Appeals concluded that McKee's counsel had been ineffective in failing to object to the emergency medical report because its admission violated McKee's confrontation rights under *Crawford v. Washington*, 541 U.S. 36 (2005), and *Davis v. Washington*, 547 U.S. 813 (2006), both of which bar the admission of testimonial hearsay unless the declarant (here, the emergency medical worker) was both unavailable to testify and the defendant had a prior opportunity for cross-examination. The court also concluded that McKee was prejudiced by this failure because it was "possible" that the result of the proceeding would have been different.

7

The Commonwealth sought discretionary review, which this Court granted.

## II. Analysis

### A. Ineffective Assistance Generally

Claims of ineffective assistance of counsel are evaluated under the two-part standard of *Strickland v. Washington*, 466 U.S. 668, 687 (1984), adopted by this Court in *Gall v. Commonwealth*, 702 S.W.2d 37 (1985).

*Strickland* first requires that a defendant "must show that counsel's performance was deficient." 466 U.S. at 687. This is done by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.*, or "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. But this review is "highly deferential" to trial counsel, and thus a "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). A defendant is not guaranteed errorless counsel or counsel that can be judged ineffective only by hindsight, but rather counsel rendering reasonably effective assistance at the time of trial. *Id.*; *see also Haight v. Commonwealth*, 41 S.W.3d 436, 442 (Ky. 2001).

Next, the defendant "must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial,

8

a trial whose result is reliable." *Id.* To make this showing, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A reviewing court must consider the totality of the evidence before the jury and assess the overall performance of counsel throughout the case to determine whether the specifically complained-of acts or omissions are prejudicial and overcome the presumption that counsel rendered reasonable professional assistance. *Id.* at 695; *see also Foley v. Commonwealth*, 17 S.W.3d 878, 884 (Ky. 2000).

Finally, "[u]nless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland* 466 U.S. at 687. With this standard in mind, we turn to the two claims of ineffective assistance in this case.

## B. The failure to independently investigate and discover the accident diagram did not prejudice McKee.

As noted above, the Court of Appeals concluded that defense counsel's reliance on the Commonwealth's Attorney's open-file policy and failure to independently investigate the scene was ineffective assistance of counsel that prejudiced McKee. We need not address whether this was ineffective assistance because, even if it was, it did not prejudice McKee, and thus cannot require reversal of his convictions.

First, although the Court of Appeals stated the *Strickland* prejudice standard correctly, it applied it incorrectly. As noted above, prejudice occurs

when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. But the Court of Appeals essentially concluded that reversal was required because there was a reasonable probability that the result *might* have been different. The *Strickland* standard is not so rigid as to require a reviewing court to conclude that the result actually would have been different absent the error; indeed, that would make for an impossibly high bar. Instead, it requires only a reasonable probability of a different outcome. Thus, uncertainty about the effect of the error is built into the standard.

But the Court of Appeals further lowered the bar by finding a reasonable probability of a different result where the attorney, had he independently investigated, "*may*" have discovered the diagram, which "*may* certainly have been of assistance to [the reconstruction expert] in rendering an expert opinion in this matter." The court even noted that it "certainly cannot say for certain whether this document would have been provided had counsel investigated nor whether the document, had it been provided, would have enabled the expert to render a definitive opinion that may have changed the course of the trial in this matter." But if the document would not have been helpful to the expert, how can McKee have been prejudiced by his counsel's failure to find it?

The Court of Appeals answered this by stating: "Nevertheless, we cannot conclude with reasonable probability that such would not have been the case had counsel conducted an investigation." But this inverts the required review and essentially places the burden on the Commonwealth to show that the defendant was not prejudiced by defense counsel's error. But under *Strickland*,

10

the burden of showing prejudice is on the defendant. Simply put, the Court of Appeals diluted the *Strickland* standard and allowed too much uncertainty about the effect of defense counsel's purported error.

This leads to the second point: McKee did not show that he was prejudiced. At best, he was able to show that an accident reconstructionist *might* have found the diagram useful. But such speculation is insufficient to show prejudice.

It is not at all clear that the accident reconstructionist never saw the diagram. The diagram came to light on the first day of trial when Officer Noble was cross-examined and explained that he had included his diagram as part of the accident report that is drafted whenever police respond to a traffic accident. He did not have a copy of the report, which was at the police station and not part of his criminal file, and a copy of it had not been provided to the Commonwealth. A short recess was taken during which copies of this report were obtained. Defense counsel even asked for an additional recess to review the report before proceeding with further cross-examination, and failing that, asked that the report be excluded from evidence. The trial court denied the recess, but allowed the officer to be recalled at a later time. The trial court excluded the diagram itself.

Importantly, however, the reconstructionist did not testify until the following day. Thus, there was an opportunity for him to be shown the diagram by defense counsel before testifying.

And the accident reconstructionist's own testimony undercuts the claimed prejudice. McKee's theory is that the diagram, which at the very least

11

showed the final position of the two cars, could have been used to reconstruct the accident. Although that information would no doubt be useful, as attested to by the expert, it would not appear to be sufficient by itself to allow a full reconstruction. Indeed, the reconstructionist testified specifically he was unable to do a reconstruction because he lacked adequate information generally, including information about the pre-impact positions of the car, such as the location of skidmarks and any debris field resulting from the collision, which would not have been disclosed by the diagram. Thus, the diagram alone would not have allowed a full reconstruction of the accident.

And additional investigation by defense counsel could not have turned up such information because it was never collected. As Officer Noble testified, he initially treated the accident as just that (aside from arresting McKee for DUI), and intended only to fill out an accident report. It was only after Mrs. Wenrick died hours later that the need to conduct a full criminal investigation manifested. And by then it was too late to collect much of the needed data, as the cars had already been removed from the scene and the other easily lost physical data, such as location of the debris field, had not been documented.

At best, independent investigation by defense counsel *might* have had some effect on the trial in this case. But such speculation falls short of the showing of prejudice required by *Strickland*.

## C. The failure to object to the EMS report was not reversible ineffective assistance of counsel.

The Court of Appeals also concluded that defense counsel's failure to object to the introduction of an emergency medical report stating that

12

Wenrick's pupils were normal with no mention of bloodshot eyes, and on which the Commonwealth's Attorney later relied as evidence that Wenrick was not intoxicated, was ineffective assistance of counsel because the admission of the report violated McKee's right of confrontation under *Crawford v. Washington*, 541 U.S. 36 (2005), and *Davis v. Washington*, 547 U.S. 813 (2006). The court also concluded that McKee was prejudiced by this because the other proof as to Wenrick's state of intoxication was in conflict.

First, it is not clear that this was an error by counsel. *Crawford* and *Davis* bar only *testimonial* hearsay. Although the Supreme Court has not articulated an all-encompassing test for what constitutes a testimonial statement, it has suggested that the core concern is with statements that either consist of actual testimony at a prior trial, are otherwise made under oath, or are made in circumstances that resemble the sort of examination that would occur at trial. Thus, statements are testimonial if made in prior testimony or in a police interrogation, *Crawford*, 541 U.S. at 68, outside the emergency setting, *Davis*, 547 U.S. at 822. This extends to statements made to "persons who are not police officers, but who may be regarded as agents of law enforcement." *Hartsfield v. Commonwealth*, 277 S.W.3d 239, 244 (Ky. 2009). This category includes medical personnel, such as sexual assault nurse examiners, "acting in cooperation with or for the police" in the course of an investigation. *Id.* But it does not extend to all medical personnel. And even then the concern is with statements made *to* the person acting on behalf of the police, not statements made *by* the medical personnel as part of diagnosis or treatment.

13

Here, the supposedly testimonial statements were those made by emergency medical personnel describing Wenrick's physical condition soon after the wreck. Although those statements may run afoul of the hearsay rules, they do not violate the Confrontation Clause because they are not testimonial. *Crawford*, 541 U.S. at 51 (noting "that not all hearsay implicates the Sixth Amendment's core concern"). Indeed, if that were the case, then all statements in medical records would run afoul of the right to confront witnesses, and clearly that is not the case. So while it is arguable that counsel failed to properly object to hearsay, that hearsay does not present a *Crawford* issue.

Regardless, McKee has not shown reversible ineffective assistance of counsel because the admission and use of the emergency medical records was not prejudicial. As with the accident diagram discussed above, the Court of Appeals misapplied the prejudice standard, concluding that it was "possible" that the result of the trial would have been different had defense counsel objected. But prejudice under *Strickland* requires showing a reasonable *probability* that the result of the trial would have been different, not a mere possibility. *Cf. Strickler v. Greene*, 527 U.S. 263, 291 (1999) (distinguishing between "reasonable possibility" and "reasonable probability," albeit in the context of a *Brady* violation).

And it is that higher standard of a reasonable *probability* of a different result that McKee failed to achieve. Although Wenrick's medical records were inconsistent as to whether he was intoxicated, mentioning "acute alcohol intoxication" while also noting a very low blood alcohol concentration (.0004, under the standard normally used in legal proceedings), the emergency medical

14

report was simply not the last straw on this issue. This Court cannot say that there was a reasonable probability of a different result if defense counsel had successfully objected to the emergency medical report, even assuming that the failure to do so was an error by his counsel.

### III. Conclusion

In finding reversible ineffective assistance of counsel in defense counsel's handling of the investigation and accident diagram, and the emergency medical report, the Court of Appeals applied the *Strickland* standard incorrectly. In both instances, the court speculated about the possibility of a different result, rather than finding a reasonable probability of a different result. Having reviewed the record, this Court concludes that there was not such a reasonable probability. For that reason, the judgment of the Court of Appeals is reversed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Andy Beshear
Attorney General

David Wayne Barr
Assistant Attorney General
Office of the Attorney General
Office of Criminal Appeals
1024 Capital Center Drive
Frankfort, Kentucky 40601-8204


COUNSEL FOR APPELLEE:

Melinda Brooke Buchanan
Assistant Public Advocate
Department of Public Advocacy
200 Fair Oaks Lane, Suite 501
Frankfort, Kentucky 40601