RENDERED:  JUNE 26, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0448-MR

JOSEPH EDGERTON                                                                APPELLANT

APPEAL FROM CARROLL CIRCUIT COURT
v.        HONORABLE REBECCA LESLIE KNIGHT, JUDGE
ACTION NO. 22-CR-00162

COMMONWEALTH OF KENTUCKY                                    APPELLEE

OPINION
AFFIRMNG IN PART AND
VACATING IN PART

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ACREE AND McNEILL, JUDGES.

McNEILL, JUDGE:  A Carroll County jury convicted Appellant, Joseph Edgerton ("Edgerton"), of first-degree criminal abuse.  The victim was Edgerton's eighteen-month-old son, F.E., whom he was determined to have scalded with water from a bathroom sink.  Multiple witnesses testified including medical professionals and Edgerton himself.  Upon conviction, Edgerton was sentenced by a Carroll County Circuit Court to serve five years' imprisonment, $1,000.00 in fines, $165.00 in

costs, and an unspecified amount of jail fees.  He appeals to this Court as a matter of right and raises seven issues of alleged error.  For the following reasons, we affirm in part and vacate in part.

## ANALYSIS

Edgerton's primary issue on appeal alleges that the trial court erred by not granting a directed verdict in his favor on the charge of first-degree criminal abuse.  In that vein, he further argues that he was entitled to lesser-included jury instructions for first-degree criminal abuse.  He also contends that his Sixth Amendment right to confront witnesses was violated by impermissible trial testimony.  Edgerton's remaining arguments can be categorized as challenging the trial court's various monetary assessments.  He concludes that cumulative error occurred, and requests that his conviction be vacated or, in the alternative, that the final judgment be corrected.  He requests palpable error review pursuant to RCr[1] 10.26 as follows:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.
>
> . . . .  For an error to rise to the level of palpable, it must be easily perceptible, plain, obvious and readily

---

[1] Kentucky Rules of Criminal Procedure.

noticeable. Generally, a palpable error affects the substantial rights of the party only if it is more likely than ordinary error to have affected the judgment.

*Martin v. Commonwealth*, 409 S.W.3d 340, 344 (Ky. 2013) (internal quotation marks and citations omitted). With this standard in mind, we turn to the record at issue.

**First-degree Criminal Abuse**

Although Edgerton requested a directed verdict at the close of the Commonwealth's case-in-chief, he did not renew his motion at the close of his case. *See Exantus v. Commonwealth*, 612 S.W.3d 871, 887 (Ky. 2020) ("If the defense presents evidence after the Commonwealth concludes its evidence, failure to properly renew a motion for directed verdict at the close of all the evidence will render the issue unpreserved."). Because Edgerton's first argument arises from an unpreserved motion for a directed verdict, we review for palpable error.

Typically, we will reverse the trial court's denial of a motion for directed verdict "if under the evidence as a whole, it would be *clearly unreasonable* for a jury to find guilt[.]" *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991) (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky. 1983)) (emphasis added). When ruling on a directed verdict motion, the trial court must view the evidence in a light most favorable to the Commonwealth. *Benham*, 816 S.W.2d at 187. Our review is confined to the proof at trial and the statutory

elements of the alleged offense. *See Lawton v. Commonwealth*, 354 S.W.3d 565, 575 (Ky. 2011). As previously stated, however, we must assess this alleged error, if any, through the lens of RCr 10.26.

We agree with the Commonwealth's assessment that Edgerton presented evidence and expert testimony supporting his theory of the case: that F.E. had crawled onto the bathroom sink, gotten stuck under the hot water, and burned himself. This included Edgerton's own testimony, wherein he completely denied involvement in the incident. In contrast, the Commonwealth presented evidence and expert testimony supporting its theory: that F.E.'s burn was an intentional immersion burn. It was undisputed that F.E. was in Edgerton's sole custody when the burn occurred. Therefore, the jury was presented with two versions of events, and yet chose to convict. There was no palpable error here.

Similarly, the trial court did not palpably err by not providing the jury with lesser-included-offense instructions for first-degree criminal abuse. As the Commonwealth convincingly asserts in its brief, "[a] complete denial defense does not provide any evidence from which a jury could rationally conclude that a criminal defendant is guilty of only a lesser offense." *See Parker v. Commonwealth*, 952 S.W.2d 209, 211-12 (Ky. 1997) ("[T]he evidence presented by Parker was a complete denial. If the jury had believed that defense, he would have been exonerated . . . [u]nder the circumstances presented, the trial judge

-4-

correctly refused to instruct on lesser-included offenses."); *see also Fairley v. Commonwealth*, 527 S.W.3d 792, 800 (Ky. 2017) ("As Fairley denied knowing that a robbery was ongoing, he lacked the requisite mental state to commit facilitation to first-degree robbery. Accordingly, the trial court properly denied Fairley's requested jury instruction."). Because Edgerton denied any involvement in F.E.'s burn, a lesser mental state would not have been appropriate for the jury's consideration based on the evidence presented.

***Confrontation***

Dr. Jennie Green provided critical testimony. She explained that when children are burned accidentally, their reflex is to "immediately pull it out" as "any of us would do," and "you don't get this very crisp, clear line of flow." The latter reflected F.E.'s injuries which were memorialized in pictures presented to the jury.

Dr. Green also referenced F.E.'s medical records which included notes from two doctors—a pediatric emergency doctor and a pediatric surgeon. Both treated F.E. prior to Dr. Green. One note stated that the F.E.'s injury was "consistent with inflicted burn." Another stated that F.E.'s injury "appear[ed] to be from a scald immersion type of mechanism." The medical records were entered into evidence without objection. Edgerton now argues that Dr. Green's recitation of these two notes from those medical records constitutes a violation of his constitutional right

to confront witnesses under the Sixth Amendment of the United States Constitution. We disagree.

"[T]he Confrontation Clause precludes admission of the statements of a witness unavailable to testify at trial if the witness' out-of-court statements were 'testimonial,' unless the accused had a prior opportunity to cross-examine the witness." *Hartsfield v. Commonwealth*, 277 S.W.3d 239, 242 (Ky. 2009) (citation omitted). "[T]he threshold examination to determine a Confrontation Clause violation is whether the proffered out-of-court statement was testimonial . . . ." *Id.* at 243. *See also Crawford v. Washington*, 541 U.S. 36, 68 (2004). "The Supreme Court's post-*Crawford* decisions . . . distinguished between testimonial medical records and records intended for medical treatment." *Little v. Commonwealth*, 422 S.W.3d 238, 246 (Ky. 2013). The medical records at issue here were non-testimonial. In any event, they were cited sparingly during Dr. Green's testimony and were duplicative of her conclusions. There was no palpable error here.

*Monetary Assessments*

We will first address jail fees and then court costs and fines. The circuit court's order imposing jail reimbursement fees stated:

> The Defendant shall be responsible for any and all jail
> fees incurred as a result of this case, which shall include
> but not be limited to booking fees; daily incarceration
> fees; medical expenses; dental expenses; drug testing fees
> The Defendant shall pay any of the aforesaid jail fees
> directly to the Carroll County Detention Center. It shall

be the duty of the Carroll County Detention Center to collect said fees in accordance with Kentucky Law.

KRS[2] 441.265(1)(a) states: "A prisoner in a county jail shall be required beginning from the prisoner's booking date to reimburse the county for expenses incurred by reason of the prisoner's confinement as set out in this section, except for good cause shown." Before its 2022 amendment, that subsection provided: "A prisoner in a county jail shall be required *by the sentencing court* to reimburse the county for expenses incurred . . . ." KRS 441.265(1)(a) (2000) (amended 2022) (emphasis added).

Building upon this statutory language, the Kentucky Supreme Court has reiterated and emphasized that "to impose jail fees against a criminal defendant during sentencing, there must be some evidence presented that a jail fee reimbursement policy has been adopted by the county jailer with approval of the county's governing body in accordance with KRS 441.265(2)(a)." *Capstraw v. Commonwealth*, 641 S.W. 3d 148, 161-62 (Ky. 2022) (footnote omitted). In the absence of such evidence, the Court concluded that "the portion of the judgment whereby jail fees are imposed against him is hereby vacated." *Id*. at 162.[3]

---

[2] Kentucky Revised Statutes.

[3] This Court has consistently applied *Captstraw* and vacated the improper imposition of jail fees based on palpable error in *Daniels v. Commonwealth*, No. 2022-CA-0212-MR, 2022 WL 17724283, at *2 (Ky. App. Dec. 16, 2022); *Campbell v. Commonwealth*, No. 2020-CA-0690-MR, 2021 WL 1051590, at *5 (Ky. App. Mar. 19, 2021), *review denied* (Aug. 18, 2021); and

And as to whether the amended statute at issue here forecloses a trial court from issuing jail fees entirely, this argument was recently addressed in *Coyle v. Commonwealth*, where the Court reasoned as follows:

> This is an overreading of the amended statutory language. The decision to substitute "beginning from the prisoner's booking date" for "by the sentencing court" was merely a clarification that jail fees begin accumulating as soon as an inmate arrives at the jail.

No. 2024-SC-0520-MR, 2025 WL 2999176, at *5 (Ky. 2025). Critically, however, the Supreme Court did not expressly address the tension in its previous decisions regarding whether the assessment of jail fees is a jurisdictional sentencing error or a procedural error. *Coyle*, 2025 WL 2999176, at *4-6. The difference is mostly academic. Whether an objection to the imposition of jail is properly preserved does not foreclose appellate courts from applying palpable error review—which, appears to be the trend. Until the General Assembly or Supreme Court instruct otherwise, we will apply palpable error review.

In the absence of any evidence of a county jail fee policy in this case, we must reverse. *Ford v. Commonwealth*, 709 S.W.3d 203, 206 (Ky. 2025) ("[i]f the Commonwealth does not put on evidence demonstrating the existence of such a policy with the concomitant approval, then the evidentiary burden for jail fees is

---

*Hill v. Commonwealth*, No. 2022-CA-0391-MR, 2023 WL 5311834, at *1 (Ky. App. Aug. 18, 2023).

not met and they cannot be imposed."). *See also Alderson v. Commonwealth*, No. 2022-SC-0071-MR, 2023 WL 4037704, at *15 (Ky. Jun. 15, 2023) (Observing that evidence could be "as simple as the Commonwealth Attorney providing a copy of the relevant ordinances."). Therefore, the imposition of jail fees resulted in palpable error, and the portion of order imposing jail fees is vacated.[4]

Edgerton also asserts that the circuit court committed error by assessing $1,000.00 in fines and $165.00 in court costs. The alleged error here is that he was indigent as evidenced by appointment of DPA counsel.

> The assessment of court costs in a judgment fixing sentencing is illegal *only* if it orders a person adjudged to be poor to pay costs. Thus, while an appellate court may reverse court costs on appeal to rectify an illegal sentence, we will not go so far as to remand a facially-valid sentence to determine if there was in fact error.

*Spicer v. Commonwealth*, 442 S.W.3d 26, 35 (Ky. 2014). Edgerton was represented by private counsel during trial. His financial status for purposes of receiving the representation of a public defender on appeal does not automatically mean that he is indigent or too poor under the law to pay the attendant costs and fines here. Thus, the assessment of fines and court costs was not erroneous, and certainly not palpably so.

---

[4] We also note that this entire exercise may be academic because no specific amount of jail fees was ordered here. However, in the absence of any explanation or objection by the Commonwealth—and due to the apparent confusion continuing to surround jail fees—we are obliged to issue the present decision.

Lastly, Edgerton asserts that cumulative error occurred, *i.e.*, "the doctrine under which multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). The only error that occurred here was the imposition of jail fees. As to the remaining issues, there was no error. Thus, no cumulative error.

## CONCLUSION

Based on the foregoing, Edgerton's conviction and sentence of incarceration for first-degree criminal abuse is AFFIRMED. His assessment of fines and costs is AFFIRMED. The imposition of jail fees resulted in palpable error, and the order of the Carroll Circuit Court imposing jail fees is VACATED.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Robert Yang
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Graham Pilotte
Assistant Solicitor General
Frankfort, Kentucky