RENDERED:  SEPTEMBER 3, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0844-MR

NORMAN M. BARASSI                                                APPELLANT

v.
APPEAL FROM HOPKINS CIRCUIT COURT
HONORABLE JAMES C. BRANTLEY, JUDGE
ACTION NO. 14-CR-00166

COMMONWEALTH OF KENTUCKY                                         APPELLEE

OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; GOODWINE AND MAZE, JUDGES.

GOODWINE, JUDGE:  Norman M. Barassi ("Barassi") appeals the Hopkins

Circuit Court's order denying his motions for an evidentiary hearing and to vacate

his conviction under RCr[1] 11.42.  After careful review, we affirm in part, reverse in

part, and remand for an evidentiary hearing.

---

[1] Kentucky Rules of Criminal Procedure.

# BACKGROUND

> Barassi was convicted of the murder[2] of P.J. Phelps,
> who was stabbed to death and whose body was later
> found in a farm pond, stripped down to socks and
> underwear.
>
> Barassi's defense at trial was that Zach McPeak, not he,
> stabbed Phelps. Barassi asserted that he, McPeak, and
> Phelps were walking in the woods when suddenly
> McPeak began stabbing Phelps. Barassi alleges that he
> attempted to step in, pulling McPeak off Phelps, but that
> ultimately Phelps died of the knife wounds inflicted by
> McPeak.
>
> Contrary to Barassi's version of the incident, McPeak
> testified at trial that Barassi, not he, was the perpetrator.
> Before trial, McPeak pleaded guilty to complicity to first-
> degree manslaughter in exchange for testifying against
> Barassi[.] He testified that Barassi killed Phelps by
> stabbing him and attempted to hide the body in a nearby
> pond.

*Barassi v. Commonwealth*, 2018 WL 896897, at *1 (Ky. Feb. 15, 2018). Barassi

was also convicted of tampering with physical evidence.[3] He was sentenced to life

imprisonment on February 22, 2017. The Kentucky Supreme Court affirmed

Barassi's conviction on direct appeal. *Id.*

On April 13, 2020, Barassi, *pro se*, filed motions to vacate his

sentence under RCr 11.42 alleging ineffective assistance of counsel and for an

---

[2] Kentucky Revised Statutes (KRS) 507.020, a capital offense.

[3] KRS 524.100, a Class D felony.

evidentiary hearing. The trial court denied the motions, holding Barassi did not "raise material issues of fact that cannot be determined on the face of the record" and there was "nothing new in the [RCr] 11.42." Record at 160. This appeal followed.

## STANDARD OF REVIEW

"We review the trial court's denial of an RCr 11.42 motion for abuse of discretion." *Teague v. Commonwealth*, 428 S.W.3d 630, 633 (Ky. App. 2014). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

A successful claim of ineffective assistance of counsel must survive the twin prongs of "performance" and "prejudice." *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), *accord Gall v. Commonwealth*, 702 S.W.2d 37 (Ky. 1985).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984). To show prejudice, the defendant must show there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is [a] probability sufficient to undermine the confidence in the outcome. *Id.* at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 695.

*Bowling v. Commonwealth*, 80 S.W.3d 405, 411-12 (Ky. 2002). "The burden is on the movant to establish convincingly that he has been deprived of some substantial right which would justify the extraordinary relief afforded by post-conviction proceedings." *Hodge v. Commonwealth*, 116 S.W.3d 463, 468 (Ky. 2003), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009) (citing *Dorton v. Commonwealth*, 433 S.W.2d 117 (Ky. 1968)).

Furthermore, a trial court is not required to hold an evidentiary hearing on a motion under RCr 11.42. *Stanford v. Commonwealth*, 854 S.W.2d 742, 743 (Ky. 1993). "An evidentiary hearing is not necessary to consider issues already refuted by the record in the trial court. Conclusionary allegations which are not supported with specific facts do not justify an evidentiary hearing because RCr 11.42 does not require a hearing to serve the function of discovery." *Hodge*, 116 S.W.3d at 468 (citation omitted).

## ANALYSIS

On appeal, Barassi raises the following arguments: (1) trial counsel failed to conduct a sufficient pretrial investigation because he did not interview two potential witnesses; (2) trial counsel failed to impeach McPeak's testimony or

adequately cross-examine regarding his plea deal; (3) trial counsel failed to make various objections; (4) trial counsel did not conduct an adequate *voir dire* of Juror 385; (5) trial counsel coerced Barassi to testify at trial; (6) trial counsel's cumulative errors require Barassi's sentence be vacated; and (7) the trial court erred in denying Barassi's RCr 11.42 motion without an evidentiary hearing.

First, Barassi alleges trial counsel should have interviewed two potential witnesses – Alex Reed and Kristin Miller. He claims Reed would have testified McPeak and Phelps had a falling out, contradicting McPeak's testimony that he and Phelps were good friends. Allegedly, Miller would have testified to a conversation she had with McPeak wherein he stated Barassi held Phelps down while McPeak stabbed him.

"In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066. Furthermore, "[t]he mere fact that other witnesses might have been available . . . is not a sufficient ground to prove ineffectiveness of counsel." *Hodge*, 116 S.W.3d at 470 (quoting *Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) (en banc)).

Herein, it was reasonable that trial counsel did not interview or call Reed or Miller as witnesses. Reed and Miller's alleged statements would have

-5-

contradicted the testimony Barassi gave at trial. Barassi stated that, on the night in question, he suspected McPeak and Phelps were working together to lure him out to the middle of nowhere. Video Record ("VR") at 1/18/2017, 9:18:02-9:18:12. Had Reed testified to a falling out between McPeak and Phelps, this likely would have raised questions as to the credibility of Barassi's testimony. Similarly, had Miller testified to Barassi holding Phelps down while McPeak stabbed him, she would have directly contradicted Barassi's testimony that the murder was committed by McPeak alone. Giving deference to trial counsel's judgment, we cannot determine this performance was deficient.

Next, Barassi claims trial counsel did not adequately impeach McPeak's testimony. The crux of this case is the credibility of both McPeak and Barassi who gave conflicting testimony, each blaming the other for stabbing Phelps. Barassi contends trial counsel should have impeached McPeak's testimony using his prior inconsistent statements. However, Barassi fails to identify the contradictory statements McPeak made prior to his testimony at trial.

A motion under RCr 11.42 must "state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds." RCr 11.42(2). "Conclusory allegations that counsel was ineffective without a statement of the facts upon which those allegations are based do not meet the rule's specificity standard[.]" *Roach v. Commonwealth*, 384

-6-

S.W.3d 131, 140 (Ky. 2012) (citations omitted). Without identification of specific inconsistent statements on which trial counsel should have questioned McPeak, Barassi's claim must fail.

Relatedly, Barassi argues trial counsel did not adequately cross-examine McPeak on his plea deal. However, this is refuted by the record. McPeak testified to pleading to complicity to first-degree manslaughter prior to trial. VR at 1/13/2017, 11:03:28-11:03:40. Trial counsel questioned him about the events leading to his plea. On cross-examination, McPeak admitted he lied about his involvement in the incident before eventually giving a statement to the police. *Id.* at 11:07:38-11:07:55, 11:23:55-11:24:50. Trial counsel then called into question McPeak's credibility by asking why he pleaded to complicity to first-degree manslaughter when he claimed to have had nothing to do with Phelps' death. *Id.* at 11:29:10-11:32:50.

While Barassi might believe this questioning was inadequate, we must presume trial counsel's conduct "falls within the wide range of reasonable professional assistance" and can be considered "sound trial strategy." *Commonwealth v. Searight*, 423 S.W.3d 226, 230 (Ky. 2014) (footnotes omitted). We must "prevent the harsh light of hindsight from distorting counsel's act or omission, making it appear unreasonable." *Id.* (internal quotation marks and footnotes omitted). Mere conjecture that a different strategy may have been

successful is insufficient under RCr 11.42. *See Harper v. Commonwealth*, 978 S.W.2d 311, 315 (Ky. 1998). On this basis, counsel's performance was not deficient.

Barassi raises five instances in which he claims trial counsel should have objected at trial. First, he alleges counsel failed to object to the testimony of Lyle Hall, a Kentucky State Police ("KSP") DNA analyst. Hall testified to two lab reports, one of which he prepared himself, and the other was prepared by another KSP analyst. The first report showed the presence of human blood was detected at the scene and the other showed Phelps' DNA was found at the scene. Barassi alleges trial counsel should have objected to Hall's testimony as a violation of his Sixth Amendment right to confront a witness because the second KSP analyst did not testify at trial.

Barassi raised this issue on direct appeal and, because trial counsel did not object on Sixth Amendment grounds, the Kentucky Supreme Court reviewed for palpable error. The Court held that, although the introduction of the second analyst's report violated Barassi's Sixth Amendment right to confrontation, there was no palpable error because

> even in his own defense, Barassi does not dispute the fact that the victim was stabbed to death at or near the location from which the tested items were taken. On the contrary, he accepts that the victim was stabbed to death but denies that he did the stabbing, placing the blame for the act on his companion, McPeak. Arguably, the KSP

-8-

blood analysis supports Barassi's theory of the case as
much as the Commonwealth's theory.

*Barassi*, 2018 WL 896897, at *3. Although our standard of review differs, we

cannot determine counsel's failure to object constitutes ineffective assistance.

Under *Strickland*, in addition to proving counsel's performance was deficient, a

movant must prove "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."

*Commonwealth v. McKee*, 486 S.W.3d 861, 867 (Ky. 2016) (citation omitted).

Because Barassi does not dispute that the murder occurred at the location where

Phelps' DNA was found, had trial counsel objected, the outcome of the case likely

would have remained unchanged.

Second, Barassi asserts counsel should have objected to hearsay

statements made by the Commonwealth's witness, Trevor Plain. Plain stated he

received a phone call from a friend who told him Phelps' body was found and

Barassi had "done it." VR at 1/12/2017, 2:35:26-2:35:50. The Kentucky Supreme

Court reviewed this hearsay statement for palpable error and held:

> Barassi concedes . . . that Plain's testimony was
> "certainly brief" and that the Commonwealth did not rely
> on this testimony in its closing, nor did the
> Commonwealth mention the hearsay comment again
> throughout [the] trial. As a result of the very limited
> nature of the statement, we find no reason to believe that
> it created any serious injustice or seriously affected the
> fairness of the trial.

*Barassi*, 2018 WL 896897, at *3. Due to the brevity of Plain's testimony and the minimal impact it had on the Commonwealth's case, Barassi has again failed to show that, but for trial counsel's failure to object, there was a reasonable probability of a different outcome in his case.

Third, Barassi claims trial counsel should have objected to hearsay testified to by Missy Gower Gibson. She testified that she overheard Barassi say, "Don't worry. I'm going to get [Phelps]." VR 1/12/2017, 1:46:07-1:46:20. "A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the statement is offered against a party and is . . . [t]he party's own statement, in either an individual or a representative capacity[.]" KRE[4] 801A(b)(1). Gibson's testimony clearly falls within this exception to the prohibition on hearsay. Therefore, counsel's decision not to object to the statement was not deficient performance.

Fourth, Barassi argues trial counsel should have objected to statements made by Detective Shawn Bean during his testimony. Detective Bean testified to being present when the sheriff spoke with an anonymous woman on the phone regarding Phelps' death. VR at 1/11/2017, 1:32:50-1:35:02. He testified that the woman reported Phelps' body was near a body of water and she suspected

---

[4] Kentucky Rules of Evidence.

McPeak and Barassi were responsible for Phelps' death. *Id.* Barassi argues these statements are inadmissible hearsay to which counsel should have objected.

Barassi's argument fails on two grounds. First, a police officer may testify to information given to him where it tends to explain the officer's subsequent action because of the information. *Sanborn v. Commonwealth*, 754 S.W.2d 534, 541 (Ky. 1988), *receded from on other grounds by Hudson v. Commonwealth*, 202 S.W.3d 17 (Ky. 2006). Such statements are admissible, not to prove the truth of the information, but "only to prove why the police officer then acted as he did." *Id.* Herein, after testifying to the woman's statements, Detective Bean explained how he used the information to proceed with the investigation of Phelps' death. VR at 1/11/2017, 1:34:42-1:35:48.

Additionally, the anonymous woman's statements, as testified to by Detective Bean, did not inform the jury of anything of which they were not already aware. Even if the statements were offered for the truth of the information, the woman only told police where Phelps' body could be found and that McPeak and Barassi were involved. These are facts to which Barassi concedes. He does not contest that Phelps was killed by the pond, that the body was placed in the pond, or that both he and McPeak were present. Therefore, Barassi has failed to show that there was a reasonable probability of a different outcome had trial counsel objected to Detective Bean's statements.

Fifth, Barassi argues trial counsel should have objected, during the Commonwealth's cross-examination of him, to a question regarding his status as a felon. Barassi testified that he was a felon. VR at 1/18/2017, 9:34:33-9:34:36. Although evidence of Barassi's prior convictions[5] was time-barred by KRE 609(b), he fails to show how he was prejudiced by this testimony. After Barassi admitted to his status as a felon, the Commonwealth did not follow up or expand on the issue in any way. Barassi also voluntarily testified to his more recent criminal activity, including daily use of methamphetamine prior to his arrest. VR at 1/18/2017, 9:09:30-9:10:15. Under these circumstances, Barassi has not shown, had trial counsel objected to the Commonwealth's question, there was a reasonable probability of a different outcome.

Next, Barassi alleges trial counsel conducted an inadequate *voir dire* of Juror 385. Juror 385 is a former employee of the Hopkins County Jail who, when asked if he could be impartial, stated he might favor one side because he had been "lied to a lot in the jail." VR at 1/10/2017, 2:23:40-2:24:15. Upon questioning by the court, Juror 385 affirmed that he would be willing and able to consider all testimony presented, including that of a convicted felon or prisoner. *Id.* at 2:25:40-2:25:55. Trial counsel did not ask Juror 385 any questions or move

---

[5] Records attached to Barassi's RCr 11.42 motion indicate he was convicted of felonies in California in 1986 and 1991.

to strike the juror for cause. Juror 385 was seated on the jury. However, on the final day of the trial, Juror 385 did not return after the lunch recess. By agreement of the court and counsel, he was designated as the alternate juror and was removed prior to deliberations. *Id.* at 1/18/2017, 1:12:33-1:12:50. Juror 385 did not have any impact on Barassi's conviction or sentence. Therefore, Barassi's claim cannot succeed because he cannot show that, had trial counsel conducted a more thorough *voir dire* of Juror 385 or moved to strike him for cause, a different outcome was reasonably probable.

Barassi also argues trial counsel coerced him to testify at trial. He claims he did not wish to testify and only did so after counsel told him he felt Barassi's testimony was mandatory. He also claims counsel told him, "When you testify, you can't put your hands on the murder weapon[.] [D]o not tell the jury you had your hands on the murder weapon, that way they can't find you guilty of tampering with evidence." Appellant's Brief at 18. Barassi further alleges trial counsel did not adequately review discovery in the case because, had he done so, he would have been aware of a phone call he made from the jail in which he admitted to having disposed of the knife by throwing it in the pond. At trial, Barassi first denied having possessed the knife but subsequently admitted to disposing of it after being confronted with a recording of the phone call on cross-examination. VR at 1/18/2017, 10:20:14-10:21:16.

The Fifth Amendment guarantees no person "shall be compelled in any criminal case to be a witness against himself[.]" The decision whether or not to testify "is of such importance that the ultimate decision must be left to the defendant himself." *Quarels v. Commonwealth*, 142 S.W.3d 73, 79 (Ky. 2004). Herein, nothing in the record refutes Barassi's claim he did not wish to testify and only did so because of trial counsel's coercion.

An evidentiary hearing is warranted only "if there is an issue of fact which cannot be determined from the face of the record." *Stanford v. Commonwealth*, 854 S.W.2d 742, 743-44 (Ky. 1993). "The trial judge may not simply disbelieve factual allegations in the absence of evidence in the record refuting them." *Fraser v. Commonwealth*, 59 S.W.3d 448, 452-53 (Ky. 2001). The issue of whether trial counsel coerced Barassi to testify and whether, had he not testified, there is a reasonable probability of a different outcome cannot be determined from the face of the record. Therefore, the trial court erred in not granting an evidentiary hearing on this issue.

Finally, Barassi alleges trial counsel's cumulative errors require his sentence be vacated. "Cumulative error is a doctrine under which multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair. We have found cumulative error only where the individual errors were themselves substantial, bordering, at least,

on the prejudicial." *Commonwealth v. Harbin*, 602 S.W.3d 166, 174 (Ky. App. 2019) (internal quotation marks and citation omitted). The doctrine of cumulative error does not apply here. Although Barassi is entitled to a hearing on the issue of whether his testimony was coerced, he did not prove prejudice resulted from any of the remaining alleged errors.

## **CONCLUSION**

Accordingly, the order of the Hopkins Circuit Court is affirmed in part, reversed in part, and remanded for an evidentiary hearing on the issue of whether trial counsel coerced Barassi to testify at trial.


ALL CONCUR.


BRIEFS FOR APPELLANT:

J. Ryan Chailland
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

James Havey
Assistant Attorney General
Frankfort, Kentucky